## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| STP NUCLEAR OPERATING COMPANY, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-3561 |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 66, *et al.*, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

This suit arises from an arbitrator's decision sustaining a grievance filed by the International Brotherhood of Electrical Workers ("Union") on behalf of Vernon Phillips, a former employee of the defendant, the South Texas Project Nuclear Operating Company ("STP"). STP terminated Phillips's employment in September 2003 for failing to report to work and for failing to provide satisfactory documentation or acceptable reasons for his absence. The parties conducted the arbitration under a collective bargaining agreement. The issues for the arbitrator were whether Phillips was discharged for cause and, if not, what the appropriate remedy should be. The arbitrator found that STP had cause to suspend and fire Phillips based on the information available when it made those decisions. The arbitrator nonetheless ordered STP to reinstate Phillips, relying on evidence that did not exist until two months after Phillips was fired to find that STP did not have just cause to do so. STP moves

to vacate the award as exceeding the arbitrator's authority and as arbitrary and capricious. (Docket Entry No. 9).  The Union moves for summary judgment, arguing that the award was within the arbitrator's authority.  (Docket Entry No. 10).

Based on the pleadings, the motions and responses, the evidence, and the applicable law, this court grants STP's motion to vacate the arbitration award and denies the Union's motion for summary judgment.  Final judgment is entered by separate order.  The reasons for these rulings are set out below.

## I.    Background

Phillips worked as a mechanic at STP's nuclear power plant since 1991.  In June 2003, Phillips asked for and received permission to leave work to seek medical attention for knee pain.  Phillips stated that he had injured his knee before reporting to work that day.  Phillips was seen by his treating physician, Dr. Thompson, and diagnosed with a knee injury.  Dr. Thompson prepared a Statement of Health Care Provider ("SHCP"), which stated that Phillips was on restricted work duty for six weeks and needed physical therapy.  Phillips returned to work the next day.  STP honored the SHCP, placing Phillips on a restricted-duty assignment for the prescribed six weeks and allowing him to leave work for physical therapy during this period.

On August 4, 2003, Phillips did not report to work.  Phillips called his supervisor and reported that he would not be at work because his knee was hurting and that he would return to work on August 6.  Phillips asked for FMLA leave for the absence.  The supervisor acknowledged the disability leave request and told Phillips that he would have to supply a

2

physician's statement – a SHCP – for the absence.  This instruction was consistent with Article 8 of the collective bargaining agreement, which included the following provision under the heading "Paid Time Off":

> a.    Personal Disability
>
>> . . . Supervisory personnel shall inform the employee, at the initial notification, whether or not the employee is required to provide satisfactory evidence of disability.

(Docket Entry No. 1, Att. 1 at 29).  The instruction was also consistent with STP's policy on attendance and absenteeism, STP-309, and on absence for personal disability, STP-310.  STP policy required employees to provide SHCPs with satisfactory explanations for absences based on illness, injury, or disability.

Phillips did not return to work as anticipated.  Instead, he was absent through August 19, 2003.  During this period, the supervisor told Phillips that when he returned to work, he would have to provide satisfactory evidence of disability during his absence.

On August 20, 2003, Phillips reported to work.  In response to the request for evidence of disability, Phillips presented two SHCPs from Dr. Thompson, one dated August 4, 2003, and one dated August 12, 2003.  The August 4, 2003 SHCP stated that Phillips was medically released  to return to work on restricted work duties.  The August 12, 2003 SHCP stated that Phillips was able to work between August 12, 2003 and August 14, 2003 and was to remain on restricted duty from August 12, 2003 to September 15, 2003.  The SHCPs were inconsistent and unsatisfactory as evidence of disability.  When asked why he did not return

3

to work when the SHCPs stated that he could, Philips replied that Dr. Thompson must have made a mistake and that he would contact the doctor to procure correct documentation.

The following day, STP formally advised Phillips that his SHCPs did not cover all of his time off and suspended Phillips without pay pending receipt of medical documentation supporting his absences.  STP gave Phillips an opportunity to obtain sufficient documentation for his absence.  A week later, Phillips met with his supervisors, but provided no additional health care statements.  On September 2, 2003, Dr. Thompson provided STP with another SHCP.  On this form, Dr. Thompson checked "no" to the question, "Was/is patient able to work," and stated that the disability extended from  August 5, 2003 to the present.  On the same form, Dr. Thompson also checked "yes" to the question, "Is patient's work restricted." Because of the conflicting statements as to Phillips's ability to work, an STP employee contacted Dr. Thompson's office and asked for the actual dates Phillips was unable to work and the actual date he was placed on restricted work duty.  In response, Dr. Thompson's office provided an updated form stating that Phillips was able to work on restricted duty after August 5, 2003, long before he had returned to work.

In addition to the SHCPs from Dr. Thompson's office, Phillips also provided STP with a SHCP from another physician, Dr. Grissom.  That SHCP stated that Phillips was unable to work from August 4, 2003 through September 4, 2003 because he was suffering from posttraumatic stress disorder; that was not covered by FMLA guidelines and was unrelated to the knee injury that had been presented as the basis for the absence from August

4

4, 2003 to August 20, 2003.  Phillips's first appointment with Dr. Grissom was not until September 2, 2003.

On September 10, 2003, STP informed Phillips that his job was terminated because he had failed to report to work and failed to provide satisfactory evidence of an acceptable reason for his extended absence.  STP determined that the statements provided by Drs. Thompson and Grissom were insufficient to support Phillips's reasons for not reporting to work.

On November 11, 2003, two months after Phillips was fired,  Dr. Thompson wrote a letter to STP.  The letter stated:

> Mr. Philips was seen back in my office today on 11/11/03.  Mr. Phillips had been given an off work status form on 8-4-03.  Due to an incomplete understanding of his work status, he has evidently been let go from his job.  Upon review of our records with him, it appears we gave him conflicting forms beginning on 8-4-03.  He did not return to work when another of our forms said he could, but he was still under the impression with the original form that he was not supposed to return to work.  That fault lies with my office and with me confusing the dates on the forms when asked for further clarification on it.  I would ask that you rescind the decision to let Mr. Phillips go if it was based on him not reporting to work.

(Docket Entry No. 9, Att. 2 at 6–7).  STP stated that it did not receive this letter until a month later, at the hearing with the Texas Workforce Commission, and the arbitrator accepted this statement.

The arbitrator was charged with answering two questions: Was Phillips discharged for cause?  If not, what shall the appropriate remedy be?  (Docket Entry No. 9, Att. 2 at 3).

After conducting a hearing and providing both parties the opportunity to present posthearing briefs, the arbitrator concluded that STP "followed its procedures in accordance with policy" in demanding that Phillips provide adequate documentation or acceptable reasons for his absence.  (*Id.* at 9).  The arbitrator found that STP was justified in its decision to suspend Phillips without pay on August 21, 2003 because Phillips had failed to "provide adequate documentation or acceptable reasons to explain his absences."  (*Id.*).  The arbitrator found that the medical documentation Phillips provided was confusing, that STP asked for further documentation, and that Phillips did not provide it.  The arbitrator found that STP did not have a "clear and adequate explanation of the reason for [Phillips's] absence . . . until [STLP's] receipt of the doctor's November 11, 2003, letter of explanation."  (*Id.*).  The arbitrator found that considering "solely the facts available to [STP] up to and including September 10, 2003, the . . . decision to terminate [Phillips] would also appear justified.  Its decision to terminate the grievant was based on the grievant's failure to provide adequate medical documentation to explain the reasons for [Phillips's] absence."  (*Id.* at 9–10).  The arbitrator concluded:

> But for the post-termination letter from the doctor that clearly explained the grievant's medical condition and provided the Company with that explanation, this Arbitrator would have denied the grievance.  However, the letter does provide the Company an explanation for the grievant's absences up to and included September 10, 2003. . . .[T]his Arbitrator finds, under these given circumstances, that the record does not provide the Company with just cause for grievant's termination. Accordingly the grievance is sustained.

(*Id.* at 10.)  The arbitrator ordered STP to reinstate Phillips to his former position because Dr. Thompson's November 11, 2003 letter, received by STP three months after it decided to discharge Phillips, provided satisfactory documentation of an acceptable reason for Phillips's extended time away from work.  The arbitrator did not require STP to pay backpay for the period before STP received the doctor's letter, because up to that date, STP was "justified in maintaining the suspension without pay." (*Id.*).  STP argues that the arbitration award in Phillips's favor must be vacated because the arbitrator's findings are contrary to the collective bargaining agreement and arbitrary and capricious.

Article six, section seven of the collective bargaining agreement provides that "seniority and continuity of service shall be terminated when an employee resigns or is discharged for cause." (Docket Entry No. 9, Att. 1 at 14).  The agreement also stated that "the sole function of the arbitrator shall be to determine whether the Company or Union is correct with reference to application and interpretation of this Agreement.  The arbitrator shall not have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this Agreement, or any part thereof." (*Id.* at 9).  STP argues that the arbitrator did not have jurisdiction to consider a remedy and order Phillips reinstated after concluding that STP was justified in its decision to discharge Phillips on the day it occurred. (Docket Entry No. 9).  STP argues that the arbitrator's consideration of the posttermination doctor's letter was impermissible under Fifth Circuit law holding that an arbitrator is to look only at the evidence before the employer at the time of the discharge.  The Union contends that the arbitrator's decision was consistent with the CBA and that, even if the arbitrator's

7

actions were improper, STP waived its objection by not raising it in the arbitration proceeding. (Docket Entry No. 10).

## II.   Analysis

### A.   The Legal Standard

This case arises under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Int'l Chem. Workers Union, Local 683C of the United Food & Commercial Workers AFL-CIO v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003). "[W]hen reviewing a case involving a [CBA] and arising under Section 301, courts are not obligated to rely on the [Federal Arbitration Act], but may rely on it for guidance in reviewing an arbitration award." *Int'l Chem. Workers Union*, 331 F.3d at 494 (citations omitted); *see also United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 41 n. 9 (1987) ("[F]ederal courts have often looked to the [FAA] for guidance in labor arbitration cases.").

Review of an arbitration award under "both the LMRA and the FAA remains extraordinarily narrow." *Int'l Chem. Workers Union*, 331 F.3d at 495. Under the FAA, "[a] district court may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. *Id.* (citations omitted). In LMRA cases, an additional ground for vacating an arbitration award is that the award was arbitrary and capricious. *See, e.g.*, *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 383 (5th Cir.

8

2004); *Oil, Chem. & Atomic Workers, Int'l Union, Local No. 4-228 v. Union Oil Co. of Cal.*, 818 F.2d 437, 440–41 (5th Cir. 1987); *Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures Inc.*, 735 F.2d 903, 905 (5th Cir. 1984).

A court's review of an arbitration award under a collective bargaining agreement is limited. *Int'l Chem. Workers Union*, 331 F.3d at 494–95. "It is only when the arbitrator strays from interpretation and application of the agreement that his decision may be unenforceable." *Garvey*, 532 U.S. at 509 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, (1960)). When the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority the fact that a court is convinced he committed serious error does not suffice to overturn that decision." *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000). The party moving to vacate an arbitration award has the burden of proof. *Lummus*, 256 F. Supp. 2d at 604.

Judicial review of an arbitration award is limited, but "[j]udicial deference to arbitration . . . does not grant carte blanche approval to any decision an arbitrator might make." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583 (5th Cir. 1980). Courts must scrutinize an arbitrator's award "to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir.

1989).  A court should not uphold an arbitrator's decision when the arbitrator dispenses his

own "brand of industrial justice" outside the scope of an arbitration agreement.  *Am. Eagle*

*Airlines, Inc. v. Airline Pilots Ass'n Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Misco*,

484 U.S. at 29).   "[W]here an arbitrator exceeds his contractual authority, vacation or

modification of the award is an appropriate remedy."  *Delta Queen*, 889 F.2d at 602.  In

short, an "arbitrator may not ignore the plain language of the contract."  *Misco*, 484 U.S. at

38.

### B.       Was the Award Contrary to Express Contractual Provisions?

The arbitrator found that STP "had just cause to [discipline] the grievant on August

21, 2003, for up to that time, the grievant had failed to provide medical documentation that

provided acceptable reasons for his absence."  (Docket Entry No. 9, Att. 2 at 9).   The

arbitrator also stated that "[b]ut for the post-termination letter from the doctor . . . this

Arbitrator would have denied the grievance," and that "[i]f one were to consider solely the

facts available to [STP] up to and including September 10, 2003, [STP's] decision to

terminate [Phillips] . . . would appear justified."  (*Id.* at 10).   These findings answered the

first question before the arbitrator: "Was grievant discharged for cause?"  The arbitrator's

answer, based on the facts available to STP on the date of discharge, was clear.  STP

discharged Phillips because he had failed to provide STP with adequate medical

documentation to explain the reasons for his absence from work, as STP's policy required.

Although the arbitrator did not use the words "cause" or "just cause" in describing STP's

decision to fire Phillips on September 10, 2003, the decision and opinion are clear.  The

arbitrator held that STP was "justified" in suspending Phillips on August 21, 2003, and in deciding to fire Phillips on September 10, 2003, considering the facts available to STP on that date.  The arbitrator found that STP had cause to discharge Phillips on September 10, 2003.

After finding that Phillips's job termination was justified on the day it occurred, the arbitrator nonetheless sustained the grievance and ordered STP to reinstate Phillips because Dr. Thompson's posttermination letter – which STP received three months after discharging Phillips – provided an acceptable explanation for Phillips's work absence.  STP argues that after the arbitrator found that STP was justified in terminating Phillips's employment, the arbitrator had no authority to fashion the remedy of ordering STP to reinstate Phillips to his former position, but without backpay up to the date STP received the doctor's November 2003 letter.  STP argues that the arbitrator could not properly consider the doctor's November 11, 2003 letter, because it did not exist until long after September 10, 2003.

An arbitrator's authority is derived from the arbitration agreement.  *See Beaird Indust., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005).  Arbitrators exceed their authority when they decide matters the agreement does not place before them. *Id.*  The CBA states that "seniority and continuity of service shall be terminated when an employee resigns or is discharged for cause." (Docket Entry No. 9, Att. 1 at 14).  In ordering that STP had to reinstate Phillips after finding that STP had discharged him for cause on September 10, 2003, the arbitrator exceeded the parties' agreement.  (Docket Entry No. 9).  The Fifth Circuit has held that an arbitrator who found – implicitly or explicitly – just cause

11

for dismissal but then proceeded to fashion an alternate remedy exceeded the scope of his authority, requiring that the award be vacated.  *See E.I. DuPont de Nemours and Co. v. Local 900, Int'l Chem. Workers Union, AFL-CIO*, 968 F.2d 456, 458 (5th Cir. 1992); *Container Products, Inc. v. United Steelworkers of Am.*, 873 F.2d 818, 820 (5th Cir. 1989); *Delta Queen*, F.2d 599 at 603.

In *Container Products*, the arbitrator reinstated a discharged employee after noting that "evidence of cause for discharge . . . has been presented by the Company."  873 F.2d at 820.  The court held that the arbitrator had no jurisdiction to fashion a remedy after finding just cause for dismissal.  *Id.*  As in the present case, the arbitrator was required to determine whether there was "just cause for the discharge" of the employee and "[i]f not, what shall be the remedy?"  *Id.* at 819.  The court stated that "as a prerequisite for altering the remedy imposed, the arbitrator must determine that no just cause for the discharge existed."  *Id.*

In *Delta Queen*, the collective bargaining agreement provided that an employee could be discharged for carelessness.  889 F.2d at 603.  The arbitrator found gross carelessness on the part of the grievant but ordered the employer to reinstate him.  That court held that once the arbitrator found "gross carelessness," the arbitrator implicitly found proper cause as defined in the agreement and had no authority to order a remedy.  *Id.* at 604.

In *DuPont*, the arbitrator found that the employer had proven that the employees had used marijuana on company premises.  968 F.2d at 458.  The arbitrator determined that discharge was an available punishment, but instead ordered reinstatement, rehabilitative treatment, and follow-up drug testing.  *Id.*  The court held that although the arbitrator did not

explicitly find that the employer had just cause to discharge the employees, the language the arbitrator used made it clear that he implicitly found just cause. *Id.* The court vacated the award on the basis that the arbitrator exceeded his jurisdictional authority when he found just cause to discharge the employees but nevertheless fashioned a remedy other than discharge.

In the present case, the CBA provides that "seniority and continuity of service shall be terminated when an employee resigns or is discharged for cause." (Docket Entry No. 9, Att. 1 at 14). It is undisputed that STP policy required an employee to give STP satisfactory documentation supporting acceptable reasons for work absences; that Phillips was repeatedly reminded of this requirement; that Phillips did not provide satisfactory documentation despite several opportunities to do so; and that Phillips did not provide satisfactory documentation until at least two months after he was fired for failing to do so. The CBA does not require STP to rehire an employee who, long after being fired for work absences that were not properly documented, provides acceptable documentation for those absences. The arbitrator found that STP was justified in maintaining the August 2003 suspension without pay until it received the doctor's November 2003 letter providing a medical explanation for Phillips's work absences, but was not justified in discharging Phillips despite his failure to provide the explanation months earlier. The CBA does not require STP to keep an employee on indefinite suspension for failing to comply with the policy requiring documentation to explain work absences, or require STP to reinstate the employee if, long after the failure to comply with company policy, the employee finally provides the necessary documentation. In reinstating Phillips after finding that his termination was justified on the day it occurred,

the arbitrator exceeded his authority under the contract, which denied him authority to "change, amend, modify, supplement or otherwise alter in any respect whatsoever this Agreement, or any part thereof."   (Docket Entry No. 9, Att. 1 at 9).   The arbitrator rewrote the parties' agreement.

Under Fifth Circuit case law, the arbitrator was authorized to create a remedy only in the event the arbitrator answered "no" to the first question, "Was grievant discharged for cause?"   "[A]s a prerequisite for altering the remedy imposed, the arbitrator must determine that no just cause for the discharge existed."   *Container Products*, 873 F.2d at 819.   The arbitrator exceeded his authority by fashioning a remedy after concluding STP was justified in firing Phillips because his failure to provide proper documentation for his prolonged work absence constituted cause for dismissal.

The arbitrator justified his decision to order reinstatement on the basis of evidence that STP did not, and could not, have considered – the November 11, 2003 letter from the doctor belatedly providing the medical information that company policy required Phillips to provide months earlier.   STP cites *American Eagle Airlines, Inc.*, 343 F.3d at 408–09, and *Gulf Coast Indust. Workers Union v. Exxon Co. U.S.A.*, 991 F.2d 244, 256 (5th Cir. 1993), to support its argument that the arbitrator could not properly rely on posttermination evidence not available to the employer when it fired the employee.   In *Gulf Coast*, an arbitrator reinstated an employee discharged for violating his employer's substance abuse policy, based on the finding that the employee's posttermination conduct showed that he was a prime candidate for rehabilitation.   991 F.2d at 248.   In that case, the parties submitted the following issue to

14

the arbitrator: "Was [grievant] discharged for just cause and, if not, what is the appropriate remedy?" *Id.* at 256. The Fifth Circuit concluded that because the question was worded in the past tense, it was "equivalent to asking 'Did Exxon possess just cause on [the date of termination] to terminate [grievant]?'" *Id.* at 255. The court held that the "arbitrator should have confined his considerations only to the facts as they existed at the time Exxon made its termination decision." *Id.*

In *Gulf Coast*, as in *American Eagle*, the court held that the arbitrator exceeded his contractual authority when he relied on facts that did not exist when the employer made the termination decision. Both *Gulf Coast* and *American Eagle* cited the Supreme Court's decision in *United Paperworks Int'l Union, AFL, CIO v. Misco, Inc.*, 484 U.S. 29 (1987). In *Misco,* the arbitrator refused to consider evidence unknown to the company when the grievant was fired. The Court upheld the award, concluding that "this approach was consistent with the practice followed by other arbitrators." 484 U.S. at 39. The Court noted that "labor arbitrators have stated that the correctness of a discharge must stand or fall upon the reasons given at the time of discharge, and arbitrators often, but not always, confine their considerations to the facts known to the employer at the time of the discharge." *Id.* at 40 n.8 (internal citations omitted).

Under *Gulf Coast*, when the parties in this case submitted the question "Was the grievant terminated for cause?" to the arbitrator, it was equivalent to asking "Was the grievant terminated for cause on September 10, 2003?" *See Gulf Coast*, 991 F.2d at 256. The arbitrator concluded that Phillips's termination was proper on the date it occurred. The

arbitrator explicitly stated "[b]ut for the post-termination letter from the doctor . . . this Arbitrator would have denied the grievance." (Docket Entry No. 9, Att. 2 at 10). As in *Gulf Coast* and *American Eagle*, the arbitrator exceeded his authority when he found that based on the information and facts available on September 10, 2003, STP was justified in discharging Phillips, but ordered Phillips reinstated based on the November 2003 doctor's letter that provided new facts and information.

The Union cites *Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299 (3rd Cir. 1982), in support of the argument that the arbitrator appropriately considered the November 2003 doctor's letter to find that STP did not discharge Phillips for cause. In *Mobil Oil*, the grievant was fired because he fought on the job and had a poor work record. Mobil did not know that the grievant had a mental disorder. The arbitrator considered information about the disorder that had not been before Mobil when it decided to fire the grievant. The Third Circuit upheld consideration of this evidence, emphasizing that the arbitrator was determining whether there was cause to fire the grievant, even if the evidence was not known to the employer. 679 F.3d at 303. In *Gulf Coast*, the Fifth Circuit distinguished the *Mobil Oil* case and concluded that it was consistent with the rule that an arbitrator may not rely on an employee's subsequent rehabilitation to order reinstatement. 991 F.2d at 256. In *Mobil*, the arbitrator considered later-discovered evidence that established and clarified the situation existing at the time of the discharge. If, by contrast, the arbitrator had considered evidence of later changes in the situation, that would have violated the rule. In the present case, STP fired Phillips on September 10, 2003 because, despite repeated instructions to obtain

16

adequate medical documentation of his extended work absence and several opportunities to do so, the information Phillips provided was inconsistent, contradictory and inadequate. Phillips finally complied with the policy when his doctor sent a letter dated November 2003, which STP did not receive until a month after that.  By considering this letter, the arbitrator did not rely on later-discovered evidence establishing or clarifying the situation as it existed on September 10, 2003.  The situation on September 10, 2003 was that Phillips had failed to provide adequate documentation showing an acceptable reason for extended absence from work.  Instead, the arbitrator relied on evidence of a later change in the situation, when Phillips had belatedly complied with STP's rules and provided information explaining his absence.  Dr. Thompson's letter does not change the fact that Phillips failed to provide adequate documentation of his absence on September 10, 2003.  Instead, the letter is itself a new factual development – adequate documentation of an acceptable reason for Phillips's absence – occurring long after Phillips's discharge.  The *Mobil Oil Corp*. case does not support the Union's argument.  The arbitrator exceeded his contractual authority by ordering Phillips reinstated based solely on the posttermination letter.  The award must be vacated.[1]

The Union argues that even if the arbitrator did exceed his authority under the CBA, STP waived that objection by not raising it in the arbitration proceedings.  The court's language in *Gulf Coast* defeats this argument:

---

[1] STP also argues that vacatur is warranted because the arbitration award is arbitrary and capricious. Because this court has concluded that the arbitrator exceeded his contractual authority, the court need not consider STP's alternative argument.

> GCIWU argues that Exxon has waived its objection to the arbitrator's consideration of Woods's post-discharge conduct by not lodging a proper objection either at the grievance hearing or in its post-hearing brief.  But given that arbitrators typically receive evidence liberally and do not feel constrained by strict applications of the rules of evidence, Exxon is not precluded from arguing this point on appeal in a *de novo* review.

991 F.2d at 255 n.12.  STP has not waived its objection to consideration of the letter.

## IV.    Conclusion

This court finds that vacatur is warranted on the ground that the arbitrator exceeded his authority.  The motion to vacate the arbitration award filed by STP Nuclear Operating Company is granted.  The motion for summary judgment filed by the International Brotherhood of Electrical Workers Local Union No. 66 is denied.  Final judgment will be entered by separate order.

SIGNED on July 6, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

18